**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **NANCY MURPHY and ROBERT STEWART,** **Plaintiffs,** v. **THOMAS JEFFERSON UNIVERSITY HOSPITALS INC. d/b/a JEFFERSON HEALTH and META PLATFORMS, INC.,** **Defendants.** | **Case No. _____** **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Nancy Murphy and Robert Stewart ("Plaintiffs"), individually and for all others similarly situated, by and through their undersigned counsel, bring this action against Thomas Jefferson University Hospitals, Inc. d/b/a Jefferson Health ("Jefferson Health") and Meta Platforms, Inc. ("Meta") (collectively, "Defendants"), alleging as follows:

## NATURE OF THE ACTION

1.      This is an action alleging violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*, violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.*, and ancillary claims for breach of contract, negligence and intrusion upon seclusion to redress Defendants' practice of capturing and sharing statutorily-protected health care information, medical records and related information for commercial gain without the knowledge or consent of Jefferson Health's patients.

2.      The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996) and Pennsylvania law, 28 Pa. Code § 115.27, both prohibit healthcare providers from sharing patients' health care information, medical records and related information with third parties except as needed for a patient's treatment, payment, or with their

consent. These laws give patients a reasonable expectation of privacy in the information they provide to, and receive from, their healthcare providers relating to their medical care and treatment, because this information may not be disclosed outside the healthcare setting without patients' knowledge and consent.

3.     Defendants have violated these laws by accessing and sharing Jefferson Health patients' health care information, medical records, and related information without their knowledge or consent. In short, Jefferson Health encourages patients to use its MyJeffersonHealth online portal to manage their healthcare services by, among other things, scheduling appointments, viewing test results, requesting prescriptions, and making payments. Defendants worked together to design and place computer code on the MyJeffersonHealth site that secretly tracks patients' protected healthcare information (*i.e.,* appointments, procedures, medicines) and metadata generated from their interaction with the site (*i.e.,* IP address, searches, location information) and automatically sends all of this information to Meta where it is used both to build-out Meta's user profiles and generate targeted advertising on its social media platforms, all to Defendants' financial benefit.

## PARTIES

4.     Nancy Murphy is an adult person who resides in the Commonwealth of Pennsylvania. Ms. Murphy has been a patient of Jefferson Health and a MyJeffersonHealth user since before 2018. Ms. Murphy opened a Facebook account before 2018 and has continuously maintained this account to the present. Since 2018, Ms. Murphy has used MyJeffersonHealth to schedule doctors' appointments, view test results, access her doctor's notes, message doctors and nurses, and review her medications among other things. By doing so, Ms. Murphy's personally-identifiable patient information and patient health information were intercepted and disclosed by

Defendants as described herein.  Ms. Murphy did not receive any notice that her personally-identifiable patient information or patient health information were being shared with Meta or Facebook, or consent to any such disclosure.

5.     Robert Stewart is an adult person who resides in the Commonwealth of Pennsylvania.  Mr. Stewart has been a patient of Jefferson Health and a MyJeffersonHealth user since before 2018.  Mr. Stewart opened a Facebook account before 2018 and has continuously maintained this account to the present.  Since 2018, Mr. Stewart has used MyJeffersonHealth to schedule doctors' appointments, view test results, access his doctor's notes, message doctors and nurses, and review his medications among other things.  By doing so, Mr. Stewart's personally-identifiable patient information and patient health information were intercepted and disclosed by Defendants as described herein.  Mr. Stewart did not receive any notice that his personally-identifiable patient information or patient health information were being shared with Meta or Facebook, or consent to any such disclosure.

6.     Jefferson Health is a multi-state non-profit health system based in Philadelphia, Pennsylvania that consists of Thomas Jefferson University Hospital, Jefferson Hospital for Neuroscience, Methodist Hospital, Jefferson at the Navy Yard and Jefferson-Voorhees.  Jefferson Health encourages its patients, which number in the thousands, to use and communicate with their medical providers through its MyJeffersonHealth patient portal.

7.     Meta is a Delaware corporation and global technology conglomerate with its principal place of business in Menlo Park, California.  Meta's business includes operation of the Facebook, Instagram and WhatsApp social media sites and related applications.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims that arise under the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*. and the Stored Communications Act, 18 U.S.C. § 2701, *et seq*.

9.      This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), which, under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453 and 1711-15 ("CAFA"), expressly provides federal courts with jurisdiction over any class action in which: the proposed class includes at least 100 members; any member of the class is a citizen of a state and any defendant is a citizen or subject of a foreign state; and the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do business in, and are subject to, personal jurisdiction in this District.  Venue is also proper in this District, because a substantial part of the events or omissions giving rise to the claim occurred in, and emanated from, this District.

## MATERIAL FACTS

11.     When a person opens a Facebook account, they accept its Terms, Data Policy, and Cookie Policy *via* a checkbox on the sign-up page, *https://www.facebook.com/.*  These Terms, Data, and Cookie Policies are binding upon Meta and its users.

12.     The Facebook Data Policy expressly states that Meta "requires" businesses that use Meta Pixels "to have lawful rights to collect, use, and share your data before providing any data to [Facebook]." [1]

---

[1] *See https://www.facebook.com/privacy/policy/version/20220104/.*

13.     However, Meta does not verify that the businesses using Meta Pixels, like Jefferson Health, have obtained the requisite consent as stated in their Data Policy.

14.     Instead, Meta applies an "honor system" where businesses, like Jefferson Health, "represent and warrant that [they have] provided robust and sufficient prominent notice to users regarding the Business Tool Data collection, sharing, and usage."[2]

15.     As a result, Meta makes its Pixels available to any willing business or publisher, including healthcare providers like Jefferson Health, regardless of the nature of its business.

16.     Meta's agreement with Jefferson Health concerning the use of Meta Pixels does not comply with the requirements of HIPAA or Pennsylvania law because it does not contain the required level of protection for consumers' personally-identifiable patient information and patient health information and allows this data to be shared without notice to, or consent from, Jefferson Health's patients.

17.     A Facebook ID is a unique and persistent identifier assigned to each user. With it, any ordinary person can look up a user's Facebook profile and name.  When Facebook users like Plaintiffs, with personally-identifiable Facebook ID cookies on their browser, use Jefferson Health's MyJeffersonHealth portal, the code embedded in the MyJeffersonHealth website, causes the patient's identity and personally-identifiable patient information and patient health information to be transmitted to Meta by the user's browser.  This transmission is not the patient's decision, but results from Jefferson Health's and Meta's purposeful use of Meta Pixels by incorporation of computer code into the MyJeffersonHealth portal. Defendants could easily program MyJeffersonHealth or the Meta Pixels so this information is not automatically transmitted to Meta

---

[2] *See https://www.facebook.com/legal/terms/businesstools.*

when a patient logs in and uses the portal.  However, it is not in either Defendant's financial interest to do so because they both benefit financially by providing this highly sought-after information.

18.     Notably, while Meta can easily identify any individual on Facebook with only their Facebook ID, so too can any ordinary person who comes into possession of a Facebook ID.  Indeed, ordinary persons who come into possession of a Facebook ID can connect to any Facebook profile. With a Facebook ID and the personally-identifiable patient information and patient health information Defendants intercept and disclose without consent from the Class members, it is possible to determine that Facebook user's doctors, health information, medications, insurance information and more.

19.     Jefferson Health created and maintains the MyJeffersonHealth patient portal, *https://mychart.jefferson.edu/Authentication/Login?,* for patients to communicate with their doctors, schedule healthcare appointments, receive test results, pay bills and engage in related matters.

20.     Jefferson Health represents that MyJeffersonHealth is "a <u>secure</u>, convenient communication channel" that "allows a patient to have <u>secure</u> web-based access to elements of their Jefferson electronic medical record" and that patients' medical records and other information about their care will be kept "confidential" and "protected." [3]

21.     The MyJeffersonHealth Privacy Policy explains that: "We are required by law to maintain the privacy of our patients' protected health information ("PHI") and to provide you with notice of our legal duties and privacy practices with respect to your PHI. We will only use and disclose your PHI as described in this Notice…  Should we wish to disclose your PHI in any

---

[3] *See https://mychart.jefferson.edu/mychart/Authentication/TermsConditions/TermsStaticView.*

manner that would constitute a sale of your PHI, we will obtain your written authorization to do so."[4]

22.     Notwithstanding these promises, without providing any notice to Plaintiffs or the Class members or receiving their consent, Jefferson Health and Meta worked cooperatively to design, create and deploy tags, tracking pixels, and web beacons and ("Meta Pixels") on the MyJeffersonHealth portal that cause the contemporaneous transmission of personally-identifiable patient information and patient health information to Meta, which used this data for multiple commercial purposes without ever providing notice to, or receiving consent from, Jefferson Health's patients.[5]

23.     At all relevant times, Defendants knew that Meta Pixels intercepted and disclosed personally-identifiable patient information and personal health information. This is clear from, among other things, the functionality of the Pixels, the nature of the targeted advertising enabled from the data the Pixels recovered, including advertising based on, for example, the prescription drugs, medical tests and procedures captured from their interaction with the MyJeffersonHealth website.

24.     Meta benefits from customers installing Meta Pixels on their websites because it gives the customer a greater incentive to advertise through on Meta's social media platforms and, even if the business does not buy social media ads, the data Meta Pixels collect (particularly when this data originates outside Meta's platforms), helps Meta build more fulsome profiles of its users'

---

[4] *See* https://www.jeffersonhealth.org/privacy-practices.html.

[5] Meta Pixels are invisible tools "rendered" out of computer code that track consumers' actions on its customers' websites and report them back to Meta and its subsidiaries. To "render" Meta Pixels for a given website, the site owner tells Meta which website events it wants to capture (*e.g*., scheduling an appointment or messaging a doctor) and Meta writes code that instructs its Meta Pixels how to capture the data and provides the necessary code to be incorporated into its website.

preferences and traits by cross-referencing and adding to the data already in its own, detailed user profiles, all of which allows it to sell highly-targeted ads that generate significant revenue.

25.     Jefferson Health benefits from installing Meta Pixels on the MyJeffersonHealth website because Meta pays it for access to the commercially-valuable, personally-identifiable patient information and patient health information it receives from the MyJeffersonHealth website.

26.     Before 2018, Ms. Murphy created an account on the MyJeffersonHealth portal by entering her name, mailing address, date of birth, gender, phone number, e-mail address and abbreviated Social Security number, answering questions from a third-party verification system. Since 2018, Ms. Murphy has used the MyJeffersonHealth portal to schedule medical appointments, view her test results, access her doctor's notes, message her medical providers, request prescription refills and review her medications.

27.     Ms. Murphy never received any notice that Jefferson Health would disclose her personally-identifiable patient information or personal health information from the MyJeffersonHealth site to Meta.  Ms. Murphy never consented to allow Jefferson Health to disclose her personally-identifiable patient information or patient health information to Meta. Jefferson Health never provided Ms. Murphy with any means to opt-out of the disclosure of her personally-identifiable patient information or patient health information from the MyJeffersonHealth site to Meta.

28.     Before 2018, Mr. Stewart opened an account on the MyJeffersonHealth portal by entering his name, mailing address, date of birth, gender, phone number, e-mail address and abbreviated Social Security number and answering questions from a third-party verification system.  Since 2018, Mr. Stewart has used the MyJeffersonHealth portal to schedule medical

appointments, view his test results, access her doctor's notes, message his medical providers, request prescription refills and review his medications.

29.     Mr. Stewart never received any notice that Jefferson Health would disclose his personally-identifiable patient information or personal health information from the MyJeffersonHealth site to Meta.  Mr. Stewart never consented to allow Jefferson Health to disclose his personally-identifiable patient information or patient health information to Meta.  Jefferson Health never provided Mr. Stewart with any means to opt-out of the disclosure of his personally-identifiable patient information or patient health information from the MyJeffersonHealth site to Meta.

## CLASS ACTION ALLEGATIONS

30.     Plaintiffs bring this action as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) for:

> All patients of Jefferson Health, or any of its affiliates, whose use of the MyJeffersonHealth portal caused their personally-identifiable patient information or personal health information to be shared with Meta without their consent.

("the Class members").

31.     This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(1), because the Class members are so numerous and geographically dispersed that their joinder would be impracticable.  Plaintiffs believe that Defendants' business records will permit the identification of thousands of people meeting the Class definition.

32.     This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(2), because there are many common questions of facts and law concerning and affecting the Class members, including:

a.  Whether Jefferson Health had a duty to protect and refrain from disclosing the Class members' personally-identifiable patient information and personal health information;

b.  Whether Jefferson Health intentionally disclosed, and Meta intentionally received, the Class members' personally-identifiable patient information and patient health information;

c.  Whether the Class members consented to Jefferson Health's disclosure of their personally-identifiable patient information and patient health information to Meta; and

d.  Whether the Class Members are entitled to damages as a result of Defendants' conduct.

33.  Plaintiffs also anticipate that Defendants will raise defenses common to the Class.

34.  This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(3), because Plaintiffs' claims are typical of the claims belonging to the Class members.  Plaintiffs and the Class members were harmed by the same wrongful conduct perpetrated by Defendants that caused their personally-identifiable patient information and patient health information to be intercepted and disclosed without notice or consent.  As a result, Plaintiffs' claims are based on the same facts and legal theories as the Class members' claims.

35.  This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(4), because Plaintiffs will fairly and adequately protect the interests of all Class members, there are no known conflicts of interest between Plaintiffs and the class members and Plaintiffs have retained counsel experienced in the prosecution of complex litigation.

36.  Class certification is appropriate under Fed. R. Civ. P. 23(b)(3), because common questions of law and fact predominate over questions affecting individual Class members, because a class action is superior to other available methods for the fair and efficient adjudication of these claims and because important public interests will be served by addressing the matter as a class action.  Further, the prosecution of separate actions by individual class members would create a

risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and substantially impair Class members' ability to protect their interests.

## COUNT I
### Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.*
### (Against both Defendants)

37.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

38.     The Class members' use of the MyJeffersonHealth portal is an electronic communication under the Electronic Communications Privacy Act ("ECPA").  *See* 18 U.S.C. § 2510(12).

39.     The MyJeffersonHealth portal is an "electronic communication service" under the ECPA.  *See* 18 U.S.C § 2510(15).

40.     Whenever Plaintiffs and the Class members interacted with the MyJeffersonHealth portal, Defendants violated the ECPA by using Meta Pixels to intercept (or endeavor to intercept) the contents of their electronic communications while knowing (or having reason to know) this information was obtained through the unlawful interception of an electronic communication.  *See* 18 U.S.C. §§ 2511 (1)(a) and (c)–(d).

41.     Whenever Plaintiffs and the Class members interacted with the MyJeffersonHealth portal, Defendants violated the ECPA by using Meta Pixels to intentionally disclose (or endeavor to disclose) the contents of their electronic communications while knowing (or having reason to know) this information was obtained through the unlawful interception of an electronic communication.  *Id*.

42.     Whenever Plaintiffs and the Class members interacted with the MyJeffersonHealth portal, Defendants violated the ECPA by intentionally using (or endeavoring to use) the contents

of their electronic communications while knowing (or having reason to know) this information was obtained through the unlawful interception of an electronic communication.  *Id.*

43.     Whenever Plaintiffs and the Class members interacted with the MyJeffersonHealth portal, Defendants violated the ECPA by intentionally divulging the contents of their electronic communications while in transmission on that service to any person or entity other than an addressee or intended recipient (or an agent of such addressee or intended recipient).  *See* 18 U.S.C. § 2511 (3)(a).

44.     Defendants do not meet any of the exceptions to liability provided by 18 U.S.C. §§ 2511.

45.     Any person whose electronic communication is intercepted in violation of ECPA has a private right of action under 18 U.S.C. §2520(a).

### COUNT II
### Violation of the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*
### (Against Meta only)

46.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

47.     Jefferson Health's MyJeffersonHealth portal is a "facility through which an electronic communication service is provided" under the Stored Communications Act ("SCA").

48.     Meta is an "entity providing an electronic communication service to the public" under the SCA.  *See* 18 U.S.C. § 2702(a)(1).

49.     Meta is an "entity providing remote communication service to the public" under the SCA.  *See* 18 U.S.C. § 2702(a)(2).

50.     Meta violated the SCA by intentionally accessing the MyJeffersonHealth portal without authorization.  *See* 18 U.S.C. § 2701(a)(1).

51.     Meta violated the SCA by intentionally exceeding an authorization to access the MyJeffersonHealth portal.  *See* 18 U.S.C. § 2701(a)(2).

52.     Meta violated the SCA by knowingly divulging the contents of communications while electronically stored on the MyJeffersonHealth portal.  *See* 18 U.S.C. § 2701(a)(2).

53.     Meta violated the SCA by knowingly divulging the contents of communications maintained on the MyJeffersonHealth portal that were received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from) its subscribers or customers.  *See* 18 U.S.C. § 2701(a)(2)(A).

54.     Meta violated the SCA by knowingly receiving from Jefferson Health the contents of communications maintained on the MyJeffersonHealth portal that were received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from) that it was not authorized to access for any purpose.  *See* 18 U.S.C. § 2701(a)(2)(B).

55.     Meta violated the SCA for purposes of commercial advantage, malicious destruction or damage, private commercial gain and in furtherance of criminal and tortious acts in violation of the Constitution or laws of the United States or any State.  *See* 18 U.S.C. § 2701(b)(1).

56.     Meta does not meet any of the exceptions to liability provided by 18 U.S.C. § 2701(c).

57.     18 U.S.C. § 2707(a) provides a private right of action to any person "aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind."

## <u>COUNT III</u>
**Breach of Contract**
**(Against Meta only)**

58.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

59.     Meta requires Facebook users to click a box indicating that, "By clicking Sign Up, you agree to our Terms, Data Policy and Cookies Policy."

60.     "Click-wrap agreements" such as the one used by Facebook are valid and binding contracts.

61.     The Facebook Terms, Facebook Data Policy, and Facebook Cookie Policy are binding on Facebook and its users.

62.     The Facebook Data Policy promises users that Facebook "requires each of [Facebook's] partners to have lawful rights to collect, use and share your data before providing any data to [Facebook]."

63.     Meta breached these contractual promises by not requiring Jefferson Health, a healthcare provider partner, to provide notice and obtain consent from its patients before receiving their personally-identifiable patient information and patient health information from the MyJeffersonHealth portal.

64.     The personally-identifiable patient information and other patient health information that Meta obtained from the Class members through the MyJeffersonHealth portal in breach of these contractual promises include: Patient IP addresses, cookie identifiers, device identifiers, account numbers and every electronic communication the patient has through MyJeffersonHealth, including medical conditions, doctors' appointments, test results and communications with their healthcare providers.

65.     Meta's breach of contract has caused Plaintiffs and the Class members to suffer damages that are measured, at a minimum, by the value Meta paid to Jefferson Health for access to their personally-identifiable patient information and patient health information from the MyJeffersonHealth portal, which represents the value of Plaintiffs' and the Class members' data.

**COUNT IV**
**Negligence**
**(Against Jefferson Health only)**

66.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

67.     Plaintiffs and Class members were patients of Jefferson Health and received healthcare services from Jefferson Health.

68.     Federal law imposes a similar duty on healthcare providers not to disclose patients' medical records for marketing purposes without the patient's express written authorization.  *See* 42 U.S.C. § 1320; 45 C.F.R. §§ 164.501; 164.508(a)(3), 164.514(b)(2)(i).

69.     Pennsylvania law imposes a duty on healthcare providers to maintain the confidentiality of all medical records and limit access to those records only to those people whom a patient grants express written authorization to view them.  *See* 28 Pa. Code § 115.27

70.     Jefferson Health breached its duty to maintain the confidentiality of medical records belonging to Plaintiffs and the Class members by intentionally deploying tracking pixels and web beacons on its MyJeffersonHealth portal that caused the transmission of personally-identifiable patient information and personal health information to third parties, including Meta.

71.     Plaintiffs and the Class members have suffered damages as a result of Jefferson Health's breach of its duty to maintain the confidentiality of medical information belonging to Plaintiffs and the Class members.  Plaintiffs' damages are measured, at a minimum, by the value of the payments Jefferson Health received from Meta related to its use of Meta Pixels on the

15

MyJeffersonHealth site, since these payments were provided to gain access to Plaintiffs' and the Class members' confidential medical records.

72.     Jefferson Health's breach caused Plaintiffs' and the Class members' damages, because it gave Meta access to their personally-identifiable patient information and personal health information, in contravention of all its duties, so this information could be used for commercial purposes.

**COUNT V**
**Invasion of Privacy - Intrusion Upon Seclusion**
**(Against Jefferson Health only)**

73.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

74.     The common law tort of intrusion protects others from intentionally intruding into a communication or matter as to which another has a reasonable expectation of privacy.

75.     Plaintiffs and the Class members have a reasonable expectation of privacy with respect to their use of, communications on and documents accessed through, the MyJeffersonHealth website not only because Pennsylvania and federal law impose a strict duty of confidentiality with respect to this information, but also because they were engaged in private communications concerning their personal healthcare decisions (communications with their healthcare providers, treatments, medications, etc…) on a password-protected website created and maintained by their healthcare provider for the express purpose of communicating about private healthcare matters.

76.     Jefferson Health intentionally intruded into communications and matter as to which Plaintiffs and the Class members have a reasonable expectation of privacy by allowing the deployment of Meta Pixels on the MyJeffersonHealth website that sent Plaintiffs' and the Class members' personally-identifiable patient information, personal health information to Meta.

16

77.     Jefferson Health also intentionally intruded into communications and matter as to which Plaintiffs and the Class members have a reasonable expectation of privacy because the MyJeffersonHealth website expressly promises that Jefferson Health will keep patient information confidential, secure and protected against unauthorized access and use."[6]

78.     Jefferson Health's intrusion into Plaintiffs' and the Class members' privacy occurred in a manner that is highly offensive to a reasonable person, because: Jefferson Health intentionally deceived its patients into believing that communications and matters addressed on the MyJeffersonHealth site would be private; worked with Meta to install a secret means of collecting this information without patients' notice and consent; sold Plaintiffs' and the Class members' personally-identifiable patient information and personal health information to be turned into targeted advertising on Meta's various social media platforms; and continued to engage in this behavior even after its conduct became publicly-known.

79.     Jefferson Health did not provide Plaintiffs or the Class members with notice that it was sharing their personally-identifiable patient information and personal health information with Meta and Plaintiffs and the Class members did not consent to share their personally-identifiable patient information and personal health information with Meta.

80.     As a result of Jefferson Health's intrusion upon their seclusion, Plaintiffs and the Class members have suffered, and will continue to suffer, damages and injury as set forth herein.

81.     For intentionally violating their common law entitlement to seclusion in their private affairs, Plaintiffs and the Class members seek all monetary and non-monetary relief allowed by law, specifically including injunctive relief requiring Jefferson Health to cease

---

[6]  *See*  *https://mychart.jefferson.edu/mychart/Authentication/TermsConditions/TermsStaticView;*
*https://www.jeffersonhealth.org/privacy-practices.html.*

violating their privacy rights without their knowledge or consent and nominal damages of $100 per violation.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully ask this Court for an Order:

a. Certifying this case as a class action, appointing Plaintiffs as Class Representatives, and appointing Stephan Zouras LLP as Class Counsel;

b. Entering judgment for Plaintiffs on their ECPA claim and awarding all damages available under 18 U.S.C. § 2520, including equitable or declaratory relief, compensatory and punitive damages and attorney's fees and costs;

c. Entering judgment for Plaintiffs on their SCA claim and requiring Meta to pay all available damages, including equitable or declaratory relief, statutory damages of at least $1,000 per person measured by the profit from Meta's violation of the Act, punitive damages and attorney's fees and costs;

d. Entering judgment for Plaintiffs on their breach of contract claim and requiring Meta to pay all available damages;

e. Entering judgment for Plaintiffs on their negligence claim and requiring Jefferson Health to pay all available damages;

f. Entering judgment for Plaintiffs on their intrusion upon seclusion claim and requiring Jefferson Health to pay all available damages;

g. Awarding injunctive and equitable relief to protect the interests of Plaintiffs and the Class members;

h. Awarding recovery of Plaintiffs' reasonable attorneys' fees and reimbursement of their litigation expenses;

i. Awarding pre- and post-judgment interest on all damages awarded; and

j. Awarding such additional relief as justice requires.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.


                                        Respectfully Submitted,

Date:   November 22, 2022                /s/ *David J. Cohen*
                                        David J. Cohen (*pro hac vice* forthcoming)
                                        **STEPHAN ZOURAS, LLP**
                                        604 Spruce Street
                                        Philadelphia, PA 19106
                                        (215) 873-4836
                                        dcohen@stephanzouras.com

                                        Ryan F. Stephan (*pro hac vice* forthcoming)
                                        James B. Zouras (*pro hac vice* forthcoming)
                                        Teresa M. Becvar (*pro hac vice* forthcoming)
                                        **STEPHAN ZOURAS, LLP**
                                        100 N. Riverside Plaza, Suite 2150
                                        Chicago, Illinois 60606
                                        (312) 233-1550
                                        rstephan@stephanzouras.com
                                        jzouras@stephanzouras.com

                                        *Attorneys for Plaintiffs*